UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRANCE AMONS, et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>CITY OF PITTSBURG, et al.,<br><br>  Defendants. | Case No. 4:19-cv-00301-KAW<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 43 |

On February 27, 2020, Defendants City of Pittsburg, Jesus Arellano, and Dillon Tindall filed a motion for summary judgment, or, in the alternative, for partial summary judgment. (Dkt. No. 43.)

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, DENIES Defendants' motion for summary judgment.

### I.   BACKGROUND

On January 12, 2018, at approximately 10:47 p.m., Pittsburg Police Department Officers Dillon Tindall and Jesus Arellano were dispatched to Nation's Hamburgers, located at 3789 Railroad Avenue in Pittsburg, California. (Decl. of Dillon Tindall, "Tindall Decl.," Ex. B ¶ 4 to Decl. of Noah G. Blechman, "Blechman Decl.," Dkt. No. 43-1; Decl. of Jesus Arellano, "Arellano Decl., Ex. C ¶ 4 to Blechman Decl.)  The reporting party stated that there was a black male adult inside of a blue Chevy Impala parked in the Nation's parking lot with its lights on and playing loud music.  (*See ids.*; CAD (dispatch) Audio, Blechman Decl., Ex. E-10 at 0:24-0:48.)

The reporting party witnessed the black male inside of the blue Chevrolet "pass something" to someone in a Toyota Camry. (CAD Dispatch Audio at :024-0:48.)  Officers Tindall

1  and Arellano drove separate patrol vehicles, but both arrived at the Nation's parking lot area at
2  approximately 10:52 p.m. (Tindall Decl. ¶ 4; Arellano Decl. ¶ 4.) As the officers pulled into the
3  parking lot, they noticed two vehicles, one of which was empty, and the other was a dark blue
4  Chevrolet Cruze backed into a parking space, with its lights on and occupied by one apparent
5  occupant, later identified as Decedent Terry Amons. *Ids*. Both officers parked their patrol vehicles
6  away from Decedent's vehicle and near the Railroad Ave. exit of the Nation's parking lot. *Ids.*

7  Officers Tindall and Arellano exited their patrol vehicles, had a brief conversation, and
8  began walking towards Decedent's car. (Arellano Decl. ¶ 5.) Officer Arellano walked a few feet
9  in front of Officer Tindall and used his flashlight to illuminate the inside of Decedent's vehicle. *Id*.
10 Officer Arellano could see that Decedent was seated in the driver's seat of the vehicle. *Id*. Officer
11 Arellano reached the vehicle and stood within a few inches from the front passenger side door and
12 spoke to Decedent through the open passenger window. *Id*. While standing at the front passenger
13 door, Officer Arellano noticed Decedent had a pair of gloves in his lap area and an exposed
14 handgun in the center console. (Arellano Decl. ¶ 5; Photos of handgun, Blechman Decl., Ex. D.)
15 Officer Arellano immediately stated over the radio "we got a gun" to alert dispatch, Officer
16 Tindall, and other officers of the potential danger. (Arellano Decl. ¶ 5; Arellano Body Worn
17 Camera Footage, "Arellano BWC," Blechman Decl., Ex. E-8 at 0:59.)

18 Officer Arellano immediately drew his service weapon and told Decedent to stay as still as
19 possible and to grab the steering wheel. (Arellano Decl. ¶ 6.) Decedent put his hands up in the air
20 with his palms facing the windshield. (McFarlane Synched video, Ex. E-2 to Blechman Decl. at
21 10:54:04-10:54:14.) Officer Tindall also drew his service weapon and made his way from the
22 passenger side around the front of Decedent's vehicle to the driver's side door area. (Tindall Decl.
23 ¶ 6.) As Officer Tindall stood outside of the driver's side door, he warned Decedent not to "reach
24 for that fucking gun." (McFarlane Synched Video at 10:54:12-10:54:14.) Officer Arellano
25 ordered Decedent to "put his hands on the fucking steering wheel, right now." (Arellano Decl. ¶ 6;
26 McFarlane Synched Video at 10:54:13-10:54:15.) Decedent appears to comply with both officers'
27 commands. (McFarlane Synched Video at 10:54:12-10:54:16.) Officer Arellano then instructed
28 Decedent to "leave your hands right there [on the steering wheel], my partner is going to take you

out of the car, alright?" (McFarlane Synched Video at 10:54:18-10:54:22.) Officer Tindall, who was positioned next to the rear driver's side door, then opened the driver's side door in order to begin the process of safely removing Decedent from the vehicle (and getting him away from the handgun). *Id*. Simultaneously, Decedent slowly lowered his right hand from the top of the steering wheel down to his lap, while his left hand remained near the steering wheel. *Id*. Officer Tindall yells at Decedent, "Do not reach for that fucking gun! Put your hands up! Put your fucking hands up!" (McFarlane Synched Video at 10:54:22-10:54:26.) Officer Arellano commands him to put his hands up. *Id.* Decedent responded with "I'm not reaching." *Id.* Officer Tindall, believing that Decedent was reaching for his gun in the center console, discharged his service weapon six times in 1.381 seconds. (Tindall Decl. ¶ 6; McFarlane Synched Video at 10:54:22-10:54:26; McFarlane's Rule 26 Report at 4, Ex. E-1 to Blechman Decl.) Officer Arellano did not fire his weapon. (McFarlane's Rule 26 Report at 4; Arellano Decl. ¶ 6.)

Following the shooting, Officer Arellano informed dispatch immediately that shots were fired. (Tindall Decl. ¶8; Arellano Decl. ¶ 7.) Decedent was still alive and exited the vehicle. *Ids*. Decedent was briefly handcuffed for officer safety. *Ids*. Officer Tindall called for a Code 3 ambulance (emergency response) to come to the scene via dispatch. (Arellano Decl. ¶ 7.) Other responding officers started performing lifesaving efforts on Decedent. *Id*. Medical personnel arrived on scene and took over life saving measures. *Id*. Decedent later succumbed to his injuries and was pronounced dead at the hospital.

On January 17, 2019, Plaintiffs Terrance Amons, Terrell Amons, and Sandra Talbert filed this civil rights lawsuit. The first amended complaint was filed on March 5, 2019. (First Am. Compl., Dkt. No. 14.)

On February 27, 2020, Defendants filed a motion for summary judgment. (Defs.' Mot., Dkt. No. 43.) On March 13, 2020, Plaintiffs filed an opposition. (Pls.'f Opp'n, Dkt. No. 47.) On March 20, 2020, Defendants filed a reply. (Defs.' Reply, Dkt. No. 54.)

## II.     LEGAL STANDARD

A party may move for summary judgment on a "claim or defense" or "part of... a claim or defense." Fed. R. Civ. P. 56(a). Summary judgment is appropriate when, after adequate

3

discovery, there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics*

1  *Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

2  In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

### III. DISCUSSION

#### A. Fourth Amendment Excessive Force Claim (42 U.S.C. § 1983)

"Section 1983 provides a cause of action against any person who, under the color of state law, abridges rights unambiguously created by the Constitution or laws of the United States. . . . [It] is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012) (internal quotations and citations omitted).  Thus, to state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Apprehension by deadly force is a seizure subject to the Fourth Amendment's reasonableness requirement."  *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Determining reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 396 (1989). Furthermore, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

##### i. Officer Arellano

As an initial matter, Defendants contend that Officer Arellano is entitled to summary

judgment on the excessive force claim because it is undisputed that "he did not use any force" against Decedent. (Defs.' Mot. at 12.) Defendants cite *Hopkins v. Bonvicino*, 573. F.3d 752, 769-70 (9th Cir. 2009) as grounds for summary judgment. *Id.* at 13. This reliance, however, is misplaced. In *Hopkins*, the Ninth Circuit clarified that summary judgment was proper on an unlawful entry, because the officer at issue was not an "integral participant," as he "participated in neither the planning nor the execution of the unlawful search." 573 F.3d at 770 (The officer remained in the front yard while other officers entered the residence.) Here, however, Officer Arellano drew his service weapon and gave Decedent commands, including commands regarding Decedent exiting the vehicle. (Arellano Decl. ¶ 6.) Thus, Officer Arellano is an integral participant.

Moreover, Officer Arellano pointed a loaded gun at Decedent and threatened deadly force, which constitutes a "high level of force." *Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537 (9th Cir. 2010). Defendants' argument that Officer Arellano's conduct did not constitute a use of force is a gross misstatement of the law, since it is undisputed that he used force. Thus, the Court will not consider Plaintiffs' failure to address this argument to constitute waiver. (*See* Defs.' Reply at 3.)

Accordingly, Officer Arellano is not entitled to summary judgment simply because he was not the one who pulled the trigger.

### ii. Officer Tindall

Defendants argue that Officer Tindall's use of deadly force was objectionably reasonable. (Defs.' Mot. at 13.) Specifically, Defendants argue that the body-worn camera footage clearly shows Decedent reaching towards a loaded handgun, which he did against clear and direct orders. *Id.* at 15. In opposition, Plaintiffs argue that Decedent was complying with the commands and unbuckling his seatbelt so that he could exit the vehicle. (Pls.' Opp'n at 10.)

In fact, Officer Arellano's body worn camera footage clearly shows that Decedent was wearing a seatbelt when he was approached by the officers. (Arellano BWC, Defs.' Ex. E-8 at 1:01.) Officer Tindall's body worn camera footage does not clearly show where Decedent is reaching immediately prior to shots being fired. (*See* Tindall Boddy Warn Camera footage,

6

"Tindall BWC," Blechman Decl., Ex. E-8 at 1:16.) That said, given that Decedent appears to be following the officers' commands, and viewing the evidence in the light most favorable to Plaintiffs, the Court must infer that he was reaching to unbuckle his seatbelt, so that he could exit the vehicle as ordered. *See id.* A jury could also find that Officer Tindall panicked when he shot Decedent. *See id.*

Accordingly, summary judgment cannot be granted on the excessive force claim.

### B.  Qualified Immunity

In the alternative, Defendants contend that they are entitled to summary judgment based on qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (internal quotations omitted). "Thus, qualified immunity is a defense either if the plaintiff fails to make out a violation of a constitutional right or if the alleged violated right was not clearly established at the time of defendant's alleged misconduct." *Scocca v. Smith*, 912 F. Supp. 2d 875, 887 (N.D. Cal. 2012) (internal quotations omitted).

Ultimately, Defendants' qualified immunity arguments are based on their arguments that Officer Arellano did not use any force, and that Officer Tindall was entitled to use deadly force because Plaintiff was reaching in the area near his firearm. (Defs.' Mot. at 18-19.) As discussed above, there is a genuine dispute of material fact as to whether Decedent was reaching towards a firearm, which is not clearly disposed of by the video recordings presented to the Court. *See* discussion, *supra*, Part III.A.ii. Because there remains a factual dispute that cannot be decided by the Court on a motion for summary judgment, the Court cannot find that Officers Arellano and Tindall are entitled to qualified immunity. *See Foster v. City of Oakland*, 675 F. Supp. 2d 992, 1005 (N.D. Cal. 2009) (finding that because "[i]mportant disputes of material fact as to what actually happened during the incident in question remain unresolved . . . the court cannot make a ruling at this time on the qualified immunity issue").

### C.  Fourteenth Amendment Loss of Familial Relationship Claim

Defendants move for summary judgment on the Fourteenth Amendment claim for loss of

1   familial relationship on the grounds that the conduct does not "shock the conscience" because the
2   incident rapidly escalated. (Defs.' Mot. at 20-21.)  Defendants contend that given the rapid
3   escalation, actual deliberation was not practical nor was there a purpose to harm without regard to
4   legitimate law enforcement objectives. *See ids*.  As to the purpose of harm standard, Defendants
5   argue that Officer Tindall had a legitimate law enforcement purpose for firing his weapon given
6   the presence of the handgun in the center console, Decedent's "continuous non-compliance with
7   the officers' clear orders and Decedent's sudden threatening gesture with his right hand towards
8   the handgun…." *Id.* at 21.
9         In opposition, Plaintiffs argue that a jury could conclude that Decedent was shot while
10  trying to unbuckle his seatbelt in an attempt to comply with the officers' commands, and that he
11  was not a threat to either officer. (Pls.' Opp'n at 15.)
12        As discussed above, however, the body worn camera footage does not establish that
13  Decedent was non-compliant, nor does it show that he was reaching towards the center console.
14  Thus, Defendants are not entitled to summary judgment on the Fourteenth Amendment claim.

15      **D.**    **Related State Law Claims**
16        Plaintiffs assert three state law claims against Officers Arellano and Tindall for negligence,
17  violation of California Civil Code § 52.1(b) ("Bane Act"), and battery.  Defendants argue that
18  summary judgment is appropriate, because there is no evidence that Defendants' use of force was
19  unreasonable. (Defs.' Mot. at 22.)  In opposition, Plaintiffs maintain that questions of material fact
20  preclude summary judgment on the state law claims. (Pls.' Opp'n at 15.)
21        Like excessive force, "[t]o prove a claim of assault or battery against a police officer under
22  California law, a plaintiff must show that the officer's use of force was unreasonable." (*Holland v.*
23  *City of SF*, No. C10-2603 TEH, 2013 WL 968295, at *4 (N.D. Cal. Mar. 12, 2013) (citing *Edson*
24  *v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998)).  Similarly, "[t]he elements of a section
25  52.1 excessive force claim are essentially identical to those of a § 1983 excessive force claim.
26  [Citations]  Thus, where a plaintiff's claims under the federal and state constitutions are co-
27  extensive, the discussion of a plaintiff's federal constitutional claim resolves both the federal and
28  state constitutional claims." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1168 (N.D. Cal.

United States District Court
Northern District of California

2009). To prevail on the negligence claim, Plaintiffs must show that the officers' conduct was unreasonable under the circumstances. Cal. Gov't Code § 820.4; *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 537-38 (2009).

As discussed above, genuine questions of material fact remain pertaining to the reasonableness of Officer Tindall's use of deadly force under the circumstances, which requires that summary judgment be denied as to the state law causes of action.

### E. Defendant's Objections to Plaintiffs' Evidence

Finally, Defendants object to six pieces of evidence Plaintiffs cite to in support of their opposition. (Defs.' Reply at 13-15.) The objections are sustained. This evidentiary ruling, however, not does affect the outcome of the pending motion, as all evidence cited in this order was presented by Defendants.

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated: June 11, 2020

KANDIS A. WESTMORE
United States Magistrate Judge